## GIFFORD v. HASSAM.

### *Malicious Prosecution. Evidence.*

In case for malicious prosecution for burning defendant's barn, defendant testified that on the day after his barn was burned, he sent his wife to an insurance agent to get the policy of insurance on his house. Plaintiff introduced the insurance agent as a witness, who testified that defendant's wife came to him the next morning after the fire, and asked for the policy, and that he supposed she meant the policy on the barn, but soon ascertained that she wanted a policy on the house, which she paid for and took. *Held,* that the statement by the witness of what he at first supposed, though not strictly admissible, was so qualified as to give no ground for assignment of error.

Plaintiff was permitted to show that while said prosecution was pending, defendant made, and caused to be made, several successive attachments of plaintiff's property, and caused it to be taken away and detained in defendant's possession. *Held,* that although said attachments might have been lawful, evidence thereof was admissible on the question of malice.

It appeared that when the officer arrested plaintiff on the warrant issued in said prosecution, he took his boots from him, and left them with one W., to be kept until produced in court. Plaintiff was permitted to show by W. that soon after the

Gifford *v.* Hassam.

boots were left with him, the officer and defendant came to him and asked to see and measure them, with a view to using them as evidence. *Held,* admissible, as tending to show that defendant took an active part against plaintiff in said prosecution.

CASE for malicious prosecution for burning defendant's barn on August 26, 1875. Plea, the general issue, and trial by jury, December Term, 1877, BARRETT, J., presiding.

On cross-examination, defendant was asked whether on the day after the fire, he sent his wife to Milton E. Smith, an insurance agent, to get the policy of insurance on said barn; and he testified that he did not, but that he sent her for the policy on his house; that he had had talk with Smith about insuring the barn, but that it was never insured. After defendant's testimony was closed, plaintiff introduced Smith, who testified, defendant objecting, that defendant's wife came to him the next morning after the fire, told him about it, and asked for the policy; that he supposed she meant the policy on the barn, but found out soon after, and the same day he thought, that she wanted a policy on the house, which she took and paid for; to which defendant excepted. Plaintiff and his two daughters testified that plaintiff was at home the morning of the fire; and the justice's record of proceedings at the court of inquiry, was introduced, showing plaintiff's examination and discharge. The plaintiff introduced no testimony tending to show how the barn was burnt; but O. H. Roberts testified that he had seen defendant at the barn during haying time, before August 3, 1875; that he went to the barn to turn the hay in the mow, and found it wet and heating, and told defendant it would all rot, to which the defendant replied that it did not make much difference, as it would probably all burn within three weeks ---that he had good friends that would burn it.

In the closing argument, plaintiff's counsel said that he would not say that defendant himself set fire to the barn, supposing it to have been insured, but that it was possible; and referred to and repeated Smith's testimony.

Plaintiff's counsel also claimed and argued that the prosecution was a part of a scheme by defendant to ruin plaintiff; and in course of the trial, introduced testimony tending to show previous

89

threats by defendant to ruin plaintiff, and to put him in prison ; and plaintiff testified, against defendant's objection, to the effect that after the prosecution was begun, and while plaintiff was absent from home procuring bail, defendant procured his property to be attached and taken to his own barn, and there locked up, and that as soon as plaintiff settled the suit in which it was attached, it was again attached by defendant's procurement, and so by several successive suits, kept from plaintiff's possession a number of weeks. To the admission of this testimony defendant excepted.

Plaintiff introduced the deposition of one Packard, to show that defendant, on his way home after the court of inquiry, said that plaintiff had unjustly got clear, but that he would follow him as long as he would want ; and that at another time, after the trial of the case of a Mrs. Russell against plaintiff, defendant said the case had gone against plaintiff, and that it had been done through his instrumentality, or words to that effect ; and that he had not done with plaintiff yet ; and that that suit was previous to said prosecution. To which defendant excepted.

Plaintiff introduced one Wilson, a hotel keeper, as a witness, who testified against defendant's objection, that Wallace, the officer who arrested plaintiff, brought him to the witness's hotel on Sunday afternoon ; that Wallace insisted that plaintiff should not go unless he left his boots ; that it was arranged between the officer, plaintiff, and the witness, that plaintiff should leave his boots with the witness, and that the witness should keep them, and not give them up nor let any one see them until they were produced in court, and that the witness loaned plaintiff a pair of boots to wear home ; that afterwards, the same evening, defendant and the officer came to the witness and wanted to see the boots, either see them or measure them, and that the witness spoke of the arrangement and refused to let them see the boots ; that the officer said he supposed the State had a right to the boots, and that the witness was well aware that they would have them. Defendant introduced testimony tending to show that there were three tracks found near the road and a brook midway between the barn and plaintiff's house, which were about four miles apart, and defend-

ant claimed that said tracks were made by plaintiff in going to and from the barn; but it appeared that at the court of inquiry the measure taken by defendant did not agree with the plaintiff's boots. To the admission of Wilson's testimony the defendant excepted. Verdict for plaintiff.

*J. J. Wilson*, for the defendant.

The evidence to the admission of which exception was taken was improperly admitted. If so, it must appear that the excepting party was not prejudiced, or the judgment will be reversed. *Fitzsimmons* v. *Southwick*, 38 Vt. 509; *Victor Sewing Machine Co.* v. *Weeks*, 49 Vt. 342.

*W. E. Johnson*, for the plaintiff.

The testimony of Smith was admissible. The remarks of counsel thereon were no ground of exception.

The testimony of plaintiff in reference to the attachments, and the testimony of Packard, was admissible on the question of malice.

The testimony in regard to the boots was material and admissible.

As no exceptions were taken to the charge, it is to be assumed that the jury were properly instructed as to the proper application of each part of the testimony.

The opinion of the court was delivered by

PIERPOINT, C. J. The only questions in this case arise on the admission of certain evidence offered by the plaintiff.

The first objection made by the defendant is to the admission of the testimony of Milton E. Smith, an insurance agent. The defendant testified that on the day after his barn was burned, he sent his wife to Smith to get the policy upon his house. The plaintiff then introduced said Smith, who testified that the plaintiff's wife came to him the next morning after the fire, told him about it, and asked for the policy, and he supposed she meant the policy on the barn, but soon ascertained that she wanted the policy on the house, which she paid for and took, and not a policy on the barn. The statement by the witness of what he at first supposed she meant, was not strictly admissible, but being followed

immediately by the statement that he was wrong in his supposition, and that it was the policy on the house that she meant, we cannot conceive it possible that any injury to the defendant could have resulted from it. And if counsel in the argument had attempted to make an improper use of it, the court, on its attention being called to it, would have prevented it, or would have set the matter right in the charge, which, for aught that appears in the case, was done.

The plaintiff, for the purpose of showing that the defendant entertained hostile feelings towards him, and as tending to show that he had instituted and was aiding in the prosecution then pending against him, from malicious motives and without probable cause, introduced testimony to show that while said prosecution was pending, the defendant attached and took away the plaintiff's property, and when the defendant's debt was paid, procured other persons to attach the same property, and thus, by successive attachments, kept said property in the defendant's possession and away from the plaintiff. It does not appear that any of these acts were illegal. The defendant had a right to secure his debt by attachments, and so had the other persons. There may have been no violation of law, yet, the circumstances under which the acts were done, and the manner of doing them, may have been such as to indicate very clearly that the defendant was acting in an unfriendly and a hostile spirit, and tend to show that the defendant entertained a malicious spirit towards the plaintiff, and a desire, not merely to collect his debt, but to injure him. We think the course the defendant pursued in respect to this matter, as related by the witness, tended to show a hostile spirit on the part of the defendant against the plaintiff. The question for the jury to settle was, with what motive the defendant instigated and aided the criminal prosecution against the plaintiff? This, of course, relates to the time of the prosecution. Was he then actuated by malice, and without probable cause? To show how this was, it was competent for the plaintiff to show the feeling manifested by the defendant toward the plaintiff, both immediately before and after the prosecution was instituted. It is, ordinarily, only in this way that in cases like this the state of feeling at the material

time can be established; and to this end we think the testimony was properly admitted. Its weight, under the circumstances of the case, was for the jury.

For the reasons above stated, the declarations of the defendant, as testified to by the witness Packard, were properly admitted.

It appears from the exceptions that when the officer arrested the plaintiff on the warrant issued in said prosecution, he took from him his boots, and left them with one Wilson, to be kept until they should be produced in court; and that after this, and before the time of the court, the defendant went with the officer to Wilson for the purpose of examining or measuring the boots. The defendant put in evidence tending to prove that tracks had been found that he claimed were made by the plaintiff in going and returning from the barn that was burned, and it was doubtless in connection with this claim that the defendant desired to examine or measure the boots. There was nothing in this to show the motive of the defendant, whether good or bad; but it was material for the plaintiff to show that the defendant took an active part in that prosecution; and proof that he was with the officer, seeking for evidence that might be used against the plaintiff in that proceeding, was admissible. The motive with which it was done might be shown by other evidence.

Judgment affirmed.